# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KEVIN VETSCH, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 25-00052-CV-W-LMC |
| | ) |
| ROBBIE MCLAUGHLIN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Pending before the Court is Defendants Kansas City, Missouri Police Department (KCPD) Officers Robbie McLaughlin's[1], Colton Evans's, and Shamell Slatton's Motion to Dismiss (Doc. #4), and Defendant Kansas City Board of Police Commissioners, through its individual members Dawn Cramer's, Tom Whittaker's, Madeline Romious's, Scott Boswell, Sr.'s, and Mayor Quinton Lucas's Motion to Dismiss (Doc. #32).

## I.  BACKGROUND

Defendants bring both motions under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As required in a motion to dismiss, the Court will treat the allegations in the First Amended Complaint as true. *Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025). Plaintiffs allege that on April 1, 2022, Defendants Evans and McLaughlin were dispatched to the Vetsch residence due to a disturbance report, specifically regarding people yelling outside. (Doc. #28 at 5-6, ¶¶ 17, 18.) When Defendants Evans and McLaughlin arrived, they discovered no

---

[1] The Court notes that the parties have used different spellings of Officer McLaughlin's name. Plaintiffs spell his name McLaughlin, while Defendants spell his last name as McLaughlan. As the Complaint identifies him as McLaughlin, so too will this Court.

disturbance. (Doc. #28 at 5, ¶19.) Defendants Evans and McLaughlin contacted Defendant Slatton who informed them that Plaintiff Kevin Vetsch could be arrested on warrant applications. (Doc. #28 at 6, ¶20.) Plaintiff Kevin Vetsch met Defendants Evans and McLaughlin at the front door after the Defendants requested that Plaintiff Brenda Vetsch wake Plaintiff Kevin Vetsch. (Doc. #28 at 6, ¶21.) One of the Defendant officers "put a hand on Mr. Vetsch's shoulder pulling him out of his home and onto the front porch area" where he was placed in unlocked handcuffs. (Doc. #28 at 6, ¶¶ 24, 25.) Plaintiff Kevin Vetsch was then escorted across the street and was "dropped on the street curb which forced the unlocked handcuffs to tighten severely around his wrists seriously injuring him" (Doc. #28 at 6-7, ¶¶ 26, 30.) At that time, Defendant McLaughlin loosened the handcuffs. (Doc. #28 at 7, ¶ 31.) Prior to being dropped, Plaintiff Kevin Vetsch inquired into the reasons he was being arrested and told the Defendant officers that he had a letter from the court regarding the warrant applications. (Doc. #28 at 6-7, ¶¶ 27-29.) After providing the letter to the Defendant officers, Plaintiff Kevin Vetsch was released. (Doc. #28 at 7, ¶32.)

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(1). The rule requires more than an "unadorned" complaint but requires less than "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). Thus, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a complaint fails to state a claim for relief, courts must "construe the complaint in the light most favorable to the nonmoving party." *Carton v. General Motor Acceptance Corp.*, 611 F.3d 451, 454

(8th Cir. 2010). The non-moving party is entitled to all reasonable inferences. *Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1148 (8th Cir. 2011). Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Courts must read the factual allegations "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity must show that they are entitled to qualified immunity on the face of the complaint." *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (internal quotes and citation omitted).

### III. DISCUSSION

Plaintiffs' First Amended Complaint alleges four counts: Count One is a § 1983[2] claim for excessive force against Defendants Evans, McLaughlin, and Slatton; Count Two is a § 1983 claim against the Board of Police Commissioners and the individual Commissioners; Count Three is a negligence claim against Defendants Evans, McLaughlin, and Slatton; and Count Four is a loss of consortium claim against all Defendants. All Defendants argue that they are entitled to both qualified immunity on the respective § 1983 claims, and official immunity as to the state law claims.[3]

---

[2] 42 U.S.C. § 1983

[3] Defendants McLaughlin, Evans, and Slatton's Motion to Dismiss (Doc. #4), was filed prior to the filing of the First Amended Complaint (Doc. #28.) The First Amended Complaint merely replaced the Board of Police Commissioners and its members for the City of Kansas City, Missouri. (Compare Doc. #1 and Doc. #28.) The substantive allegations remained the same against Defendants McLaughlin, Evans, and Slatton. Therefore, this Court will treat the Motion to Dismiss as a motion to dismiss the First Amended Complaint (Doc. #28) against Defendants McLaughlin, Evans, and Slatton.

3

A. <u>Preliminary matters</u>

  i. <u>The Board</u>

Defendants argue that the Board of Police Commissioners is not a suable entity and must be dismissed. (Doc. #33 at 3-4.) In so arguing they cite *Edwards v. Baer*, 863 F.2d 606, 609 (8th Cir. 1988) and several orders from this District that find that the Boards of the Police Commissioners for St. Louis and Kansas City are not suable entities. (Doc. #33 at 3.) Plaintiffs argue that the Board is a proper party and cites two cases from this District. (Doc. #34 at 5.) Neither cited case, however, supports Plaintiffs' position as neither case finds that the Board is a suable entity. In *English et al. v. Kansas City Board of Police Commissioners et al.*, 4:21-cv-00446-BP, the Kansas City Board of Police Commissioners was initially named as a party to the case but in Plaintiff's Second Amended Complaint (*English,* Doc. #49) the Board was dropped and the case proceeded against the individual Commissioners. In *Strickland v. Kansas City, Missouri Board of Police Commissioners et al.*, 4:23-cv-00313-DGK, the Petition as originally filed in Jackson County Circuit Court, and the Amended Complaint & Jury Demand indicated that the Kansas City, Missouri Board of Police Commissioners was being sued by and through its individual members. (*Strickland*, Doc. #1-2 at 5; Doc. #102 at 5.) Neither of these cases stand for the proposition that the Board is a suable entity. *Edwards* follows a long line of cases finding that the Boards of Police Commissioners of either St. Louis or Kansas City are not suable entities. *Edwards*, 863 F.2d at 609; *Best v. Schoemehl*, 652 S.W.2d 740, 742 (Mo. Ct. App. 1983) (stating that "[i]t has long been established that the St. Louis Board of Police Commissioners may only be sued by bringing an action against the individual members of the Board in their official capacity.") The law is well settled in this area and the Court finds dismissal of the Board appropriate.

ii. Official Capacity Claims Against the Commissioners

Defendants argue that the individual Commissioners sued in their official capacity are not a cognizable claim as they are not considered as "persons" under § 1983. (Doc. #33 at 4.) Plaintiffs do not directly address this point and instead argue that the discovery is needed to determine whether the insurance exception applies and in the alternative state that they are requesting medical expenses, future medical expenses and lost wages as to Count Two (the §1983 case against the Commissioners). (Doc. #34 at 5-6.) Plaintiffs have not explained how the request for medical expenses, future medical expenses and lost wages would impact the official capacity §1983 claim against the individual Commissioners. Plaintiffs also, again without authority, state that the "loss of consortium claim survives as a derivative of Mr. Vetsch's bodily injury under alleged violations of Kevin Vetsch's constitutional rights under 42 U.S.C. §§ 1983 and 1988." (Doc. #34 at 6.) Plaintiffs provide no case law to support their arguments.

As Plaintiffs have not directly contested the argument that the individual Commissioners, acting in their official capacities, are not persons under §1983 and cannot be sued, they have conceded the point. *Turner v. ILG Techs.*, LLC, 2023 WL 3553133, at *2 (W.D. Mo. May 18, 2023) (finding that "if a party does not refute the opposing party's argument, then it is deemed a concession.") Furthermore, because Plaintiffs have not provided any explanation as to how their alternative request that Count Two be deemed to be requesting medical expenses, future medical expenses and lost wages impacts the determination of whether the individual Commissioners acting in the official capacity can be sued under §1983, their point is waived. *United States v. Wiggins*, 104 F.3d 174, 177 n. 2 (8th Cir. 1997) (finding that a "[f]ailure to specify error or provide citations in support of an argument constitutes waiver.") Furthermore, as the case law is clear, a "suit for damages against a state official in his official capacity is a suit against the State, and the

5

Case 4:25-cv-00052-LMC    Document 46    Filed 09/25/25    Page 5 of 18

State is not a person under § 1983." *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017). Therefore, the official capacity claims against the individual Commissioners must be dismissed.

B. Qualified Immunity

Qualified immunity protects government officials in their performance of discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6, 134 S. Ct. 3, 5 (2013) (internal quotations and citations omitted). The protection affords immunity from suit which is "'effectively lost if a case is erroneously permitted to go to trial.'" *Bradley v. Arkansas Dep't of Educ.*, 301 F.3d 952, 955 (8th Cir. 2002) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985)). Courts resolving claims of qualified immunity must determine: (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right[,]"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). Courts are free to resolve the two requirements in the order they see proper for the matter they are deciding. *Id.* at 236.[4]

---

[4] The Court notes that Defendants seem to reference a proposition that the Supreme Court rejected nineteen years ago. (Doc. #5 at 6, Defendant's citation to *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006)). The Supreme Court in *Pearson* overruled *Saucier's* mandate that the two-step protocol be followed in determining a qualified immunity claim. *Pearson* found the *Saucier* protocol, while useful, was no longer mandatory, and courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Therefore, to the extent that Defendants argue that the first step must be determined first, that proposition has been rejected.

6

A clearly established right is a right that is sufficiently clear so "'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011) (internal citations omitted)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). In other words, to be clearly established "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 590 (2018).

Excessive force claims associated with arrests are analyzed under the Fourth Amendment. *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004). "In assessing a claim of excessive force, courts ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 466, 141 S. Ct. 2239, 2241 (2021) (internal quotations and citations omitted). This standard should not be applied mechanically, but in the context of the "facts and circumstances" of the particular case. *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473 (2015). Factors to consider include, but are not exclusive, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). Courts may also look at "the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force[.]" *Kingsley*, 576 U.S. at 397.

i. <u>§ 1983 Claims Against Individual Officers</u>

Plaintiffs' lone §1983 claim against Defendants Evans, McLaughlin, and Slatton is contained in Count One where there is discussion of excessive force (¶¶ 40, 41, 45-47), unlawful arrest (¶¶ 41, 47), and unlawful detention (¶44). (Doc. #28 at 8-10.) Plaintiffs' First Amended Complaint alleges that "[i]n committing the acts complained of herein, Defendants Evans, McLaughlin, and Slatton acted under color of State law to show deliberate indifference to Mr. Vetsch by his unlawful arrest, use of excessive force, and in deprivation of Mr. Vetsch's rights under the Due Process Clause of the 14th Amendment of the United States Constitution." (Doc. #28 at 9, ¶47.) It is therefore unclear what exactly the Plaintiffs are alleging in Count One as they have raised multiple causes of action under one count. Such lack of clarity is evidenced in the briefing on the motion to dismiss. In their suggestions in support of the motion to dismiss, Defendants do not mention a claim for unlawful arrest or unlawful detention. (Doc. #5 at 5-7.) Plaintiffs on the other hand mention unlawful arrest, but not unlawful detention, in discussing their excessive force claim. (Doc. #12 at 3-6.) If the Plaintiffs are trying to raise all three claims, such pleadings "unfairly burdens both the defendants and the Court to pick through the . . . pleadings to determine what, if any, viable claims Plaintiff has [plead] against which defendants." *Norman v. Cent. Tr. Bank Inc.*, 2019 WL 5847845, at *3 (W.D. Mo. Nov. 7, 2019); *see also Jaiyeola v. Garmin Int'l, Inc.*, 2020 WL 4678378, at *3 (D. Kan. Aug. 12, 2020) (finding that, read together, Fed. R. Civ. P. 10(b) and 8(d)(2) "suggest[] that the purpose of organizing a complaint into separate counts is to place defendants on notice as to exactly what they are defending against, whether an entirely separate cause of action or alternative theories of recovery.") Furthermore, the First Amended Complaint appears to "improperly conflate[] what is an independent Fourth Amendment claim for excessive force (to address the unreasonable use of force in effectuating an arrest/seizure

of a person) with a Fourth Amendment claim for unlawful arrest or detention (to address an unreasonable arrest/seizure without probable cause or reasonable suspicion, as applicable)." *Null v. Garcia*, 709 F. Supp. 3d 745, 760 (W.D. Mo. 2023) (citing *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 428-29, 137 S.Ct. 1539 (2017)).

After carefully reviewing the First Amended Complaint, the Court finds that the Plaintiffs seek only to raise an excessive force claim. First, an unlawful arrest claim requires a finding that the arresting office lacked probable cause to believe that the defendant either committed or was committing an offense. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008-09 (8th Cir. 2017). The First Amended Complaint does not discuss probable cause, nor does it discuss an offense for which Plaintiff Kevin Vetsch was being arrested on. Instead, all that is alleged is that Plaintiff Kevin Vetsch was being arrested on warrant applications. (Doc. #28 at 6, ¶¶ 20, 28.) There is no further discussion of the warrant applications or the basis for those warrant applications. Thus, there is a lack of detail in the First Amended Complaint which leads this Court to believe that Plaintiffs are not asserting a claim for unlawful arrest or unlawful detention. Second, when discussing unlawful arrest, as well as unlawful detention, in the First Amended Complaint, Plaintiffs always discuss those in relation to the excessive force claim. (Doc. #28 at 8-9, ¶¶ 41, 44, 47.) Similarly, Plaintiffs' opposition brief to the motion to dismiss also appears to argue unlawful arrest in relation to the excessive force claim under the *Graham* factors discussed below. (Doc. #12 at 3-6.) In fact, Plaintiffs state "[i]t was excessive use of force to arrest Mr. Vetsch. . . . It was excessive use of force to arrest, handcuff and drop Mr. Vetsch to the concrete curb." (Doc. #12 at 6.) Therefore, it appears Plaintiffs are using the term unlawful arrest and unlawful detention as a description of the events and not a specific claim of unlawful arrest.

9

Additionally, it appears there are two claims of excessive force: (1) excessive force in handcuffing Plaintiff Kevin Vetsch, and (2) excessive force in dropping Plaintiff Kevin Vetsch on the curb. Therefore, this Court will construe the excessive force claim as encompassing two distinct events.

### a. Excessive Force in Arresting and Handcuffing

Applying the *Graham* factors, as discussed above, the Court notes that Plaintiffs attempt to argue that the arrest was unlawful and therefore excessive. The fact that Plaintiff Kevin Vetsch was arrested on a warrant application alone raises the Court's curiosity. The Plaintiffs, however, have provided no other information on the warrant application or the circumstances underlying the warrant application. Without a clear allegation, as opposed to conclusory allegations that the arrest was unlawful, this Court will not infer that the arrest was unlawful. *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (finding that "[c]onclusory allegations and 'threadbare recitals of the elements of a cause of action' cannot survive a motion to dismiss."); *see also Beck v. Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir. 1992) (finding that courts are "not permitted to read into the complaint facts that are not there.") The simple fact is that the Plaintiffs have failed to include pertinent information as to the severity of the crime at issue.

"There is no general constitutional right for an arrestee to be free of handcuffs[.]" *Robbins v. Lappin*, 170 F. App'x 962, 964 (7th Cir. 2006). Handcuffing an individual may equate to excessive force but there must be a showing that the force used in handcuffing the individual was more than what was reasonable. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency." *Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015) (internal

10

quotation and citation omitted). As alleged in this matter, however, the Court finds that the First Amended Complaint fails to allege a constitutional violation. Plaintiffs have not alleged that the officers applied more force than was reasonable in handcuffing Plaintiff Kevin Vetsch. Nor are there any allegations of injuries at the time handcuffs were originally placed on Kevin Vetsch. The First Amended Complaint therefore fails to state a claim for excessive force in placing Plaintiff Kevin Vetsch in handcuffs.

The First Amended Complaint, thus, lacks any information as to the underlying crimes at issue. Such a failure leaves this Court unable to determine the type of reasonable force needed for arresting Kevin Vetsch. Nevertheless, the act of handcuffing a defendant is *de minimis* and Plaintiffs have not identified any injury to Plaintiff Kevin Vetsch when the handcuffs were initially placed on his wrists. Therefore, the motion to dismiss the excessive force claim related to placing Plaintiff Kevin Vetch in handcuffs is granted.

b. <u>Excessive Force in Dropping Plaintiff Keven Vetsch</u>

The Court now turns to whether there was excessive force in dropping Kevin Vetsch to the curb which caused the handcuffs to tighten around his wrists. First, however, the Court must determine if all officers were involved in the incident where Kevin Vetsch was dropped to the curb. Officers may be held liable for excessive force by another officer if they fail to intervene to prevent the use of excessive force. *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009); *Baude v. Leyshock*, 23 F.4th 1065, 1074 (8th Cir. 2022). "To establish such a claim, however, a plaintiff must show, inter alia, that the officer observed or had reason to know that excessive force would be or was being used." *Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011) (internal quotations and citations omitted). The only information we have on Defendant Slatton is that Defendant Slatton "was contacted in regard to this incident and confirmed that Mr. Vetsch could be arrested

11

for the warrant applications."[5] (Doc. #6 at 28, ¶20.) Therefore, the Court finds that there was no personal involvement by Defendant Slatton when Plaintiff Kevin Vetsch was dropped on the curb and Defendant Slatton is entitled to qualified immunity on such a claim.

With regard to the other two offices, the Court is unable at this time to determine whether they are entitled to qualified immunity. While the wording of the First Amended Complaint that Mr. Vetsch was dropped on the street curb" (Doc. #28 at 7, ¶30) gives this Court pause as to whether the required state of mind is present for a § 1983 action, such wording does not clearly state whether Mr. Vetsch was negligently dropped or purposefully dropped. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473, (2015) (finding that a plaintiff need only show that the "the force purposely or knowingly used against him was objectively unreasonable.") Purposeful use of force against a handcuffed individual that is not resisting may be found to be unreasonable under the Fourth Amendment.[6] *See Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009) (finding that it is "clearly established that the use of this type of gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the Fourth Amendment.") If, however, Mr. Vetsch was accidentally dropped, there would be no Fourth Amendment claim as "the Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 1381 (quoting *Byars v. United States*, 273 U.S. 28, 33, 47 S.Ct. 248, 250 (1927)). Because the Amended Complaint does not clearly state the nature of the drop, this Court

---

[5] The Court notes that there are no allegations of fact that Defendant Slatton was Defendants Evans' and McLaughlin's supervisor. Therefore, this Court will not analyze this claim as a failure to supervise claim.
[6] The Court notes that Defendants argue that Plaintiff alleges no physical injury from the handcuffing -*de minimis* or otherwise – and therefore, alleges no constitutional violation." (Doc. #5 at 6.) Such a statement is a mischaracterization of the law. The Eighth Circuit has stated that "an officer is not entitled to qualified immunity if his use of force is excessive in the circumstances, even if the injury inflicted was minor." *LaCross v. City of Duluth*, 713 F.3d 1155, 1159 (8th Cir. 2013).

12

is unable to make a full determination of whether qualified immunity applies in this matter. This Court will therefore defer ruling on the Motion to Dismiss and afford Plaintiffs an opportunity to provide greater detail by filing an amended complaint. To the extent possible, the amended complaint shall provide greater detail as to the nature of the drop. Thus, in addition to specifically identifying who dropped Plaintiff Kevin Vetsch, Plaintiffs, to the extent possible, must include detailed factual allegations (not conclusions) as to: (1) whether there were any statements made to Kevin Vetsch at or around the time of the drop; (2) whether any statements were made after the drop; (3) provide greater detail as to the force used in dropping Plaintiff Kevin Vetsch; and (4) whether the officers responded in any other way to Kevin Vetsch being dropped. Upon the filing of an amended complaint, the Defendants shall have an opportunity to answer or otherwise respond to the complaint, including any renewed qualified immunity argument. The Court will therefore defer ruling as it relates to Plaintiffs' excessive force claims against Defendants McLaughlin and Evans.

  ii. <u>§ 1983 Claims Against Individual Commissioners</u>

Like the claims against the individual officers, the claims against the Commissioners are fraught with difficulties as Plaintiffs have raised multiple causes of action under one count causing a lack of clarity in their pleadings. (Doc. #28 at 10-14.) It appears they are alleging that the individual Commissioners had a "policy, custom and/or practice" which resulted in the deprivation of Kevin Vetsch's constitutional rights. (Doc. #28 at 10, ¶53.) Plaintiffs, however, do not specify the "policy, custom and/or practice." Plaintiffs then indicate that the individual Commissioners "failed to properly train or modify training to Defendants Evans, McLaughlin or Slatton and other officers, including but not limited to, matters related to lawful arrests, the reasonableness and appropriate use of force during such arrests, proper handcuffing and intervention in the excessive

13

use of force by fellow officers." (Doc. #28 at 10-11, ¶54.) Plaintiffs then discuss the "lack of training and the failure to modify its training[,]" and indicate that the "failure to train and/or to appropriately modify training constituted official Defendants Board and Commissioners' policies, practices, and customs." (Doc. #28 at 11, ¶¶ 57, 59.) The pleadings go on for over two pages asserting conclusory allegations without specific factual allegations. As held by *Iqbal*, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotations and citations omitted).[7] Besides the references to the alleged failure to train or supervise, Plaintiffs have not alleged any specific custom, policy or practice which led to the alleged deprivation of rights.[8] Therefore, the Court will simply analyze Count Two as an allegation of a failure to train and/or supervise.

The individual Commissioners argue they are entitled to qualified immunity on the § 1983 claims because the First Amended Complaint fails to allege facts suggesting a deliberate indifference to a pattern of unconstitutional acts and that the Plaintiffs cannot show that the right was clearly established at the time of the incident. As discussed *supra,* qualified immunity necessitates "an individualized analysis of each officer's alleged conduct." *Walton v. Dawson*,

---

[7] In addition to the kitchen-sink pleadings, Plaintiffs have sued Commissioners Romious and Whittaker. Defendants note that those Commissioners were not commissioners at the time of the events in the instant matter. Because the Court is dismissing this claim due to failing to state a claim, the Court will not address this argument.

[8] In their responsive brief, Plaintiffs discuss KCPD Instruction No. 17-05, which purportedly states "No person will be arrested, booked, or charged unless the sworn member has probable cause to believe the person has committed the specific crime for which they are being arrested." (Doc. #34.) Plaintiffs offer no argument as to how this policy caused a deprivation of rights. The policy, in fact, supports upholding an individual's constitutional rights.

752 F.3d 1109, 1125 (8th Cir. 2014) (internal quotations and citations omitted). Regarding a failure to train and/or supervise, the Eighth Circuit has stated that when

> a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.

*S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). This exacting standard requires that supervisors "have notice of a pattern of conduct that was sufficiently egregious in nature." *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 624 (8th Cir. 2021) (internal quotations and citations omitted). The misdeeds of a subordinate are not sufficient to hold a supervisor liable under § 1983. *Iqbal*, 556 U.S. at 677, 129 S.Ct. at 1949.

Plaintiffs have failed to allege that the Commissioners had such notice. The Commissioners are therefore entitled to qualified immunity for the individual capacity claims contained in Count Two.

C. Official Immunity

In Missouri, a public employee is protected "from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts[,]" through the doctrine of official immunity. *Johnson v. Schurman*, 2025 WL 2112860, at *5 (8th Cir. July 29, 2025). "The purpose of this doctrine is to allow public officials to make judgments affecting the public safety and welfare without the fear of personal liability." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019) (internal quotations and citations omitted). "Official immunity does not apply, and a public official may be held personally liable for the damages the official caused, in two narrow exceptions: (1) when a public official fails to perform a ministerial duty required of the official by law, or (2) when a public official acts in bad faith or with malice."

15

*State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. 2024). Missouri courts define ministerial duties as:

> typically clerical in character and such that they compel a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. A duty is ministerial when a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to the public official's judgment or opinion concerning the propriety or impropriety of the act to be performed. The central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task—by definition—is not ministerial.

*Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874, 886 (8th Cir. 2025) (quoting *Alsup*, 588 S.W.3d at 191). A pleading fails to state a claim for relief where it fails to establish an exception to official immunity applies. *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471 (Mo. 2023).

    i. <u>Count Three</u>

Count Three of the First Amended Complaint alleges that "Defendant Slatton breached his[9] duty of care in his confirmation that Mr. Vetsch could be arrested for the warrant applications when in fact, he could not lawfully be arrested on warrant applications." (Doc. #28 at 14, ¶79.) Plaintiffs further allege that Defendants Evans and McLaughlin "breached their duty of care in their use of excessive force in the unlawful arrest of Mr. Vetsch and allowing him to be dropped on the concrete street curb while handcuffed in their care, custody and control severely injury himself." (Doc. #28 at 14, ¶80.) In response to Plaintiffs' negligence claim, Defendants Evans, McLaughlin, and Slatton argue that they are entitled to official immunity for such claim.

---

[9] The Court notes that the parties have used different pronouns for Defendant Slatton. Plaintiffs refer to Defendant Slatton as a male, yet Defendants refer to Defendant Slatton as a woman.

With regard to Officer Slatton, Plaintiffs have not alleged the ministerial duty applies and have not alleged malice on the part of Officer Slatton. Therefore, Count Three against Officer Slatton is dismissed.

As with the qualified immunity claim against Defendants Evans and McLaughlin, the Court will defer ruling on official immunity. The Court recognizes that the analysis of official immunity differs from that of qualified immunity, however, the Court believes that the additional facts discussed *supra* would be welcomed in determining whether official immunity applies to this matter. Therefore, the Court will defer ruling on whether Count Three should be dismissed as it is applied to Officers McLaughlin and Evans.

    ii. <u>Count Four</u>

In Count Four, Plaintiff Brenda K. Vetsch alleges a loss of consortium claim against the Defendants. (Doc. #28 at 15.) The individual officers argue that because the loss of consortium claim is derivative of the negligence claim, the loss of consortium claim also fails. (Doc. #5 at 9.) The individual Commissioners argue that they are entitled to official immunity on Count Four. (Doc. #33 at 10.)

Regarding the claims of the individual Commissioners, Plaintiffs have not alleged that the ministerial duty exception applies and have failed to allege malice on the part of the individual Commissioners. Instead, the Plaintiffs have asserted malice on the part of the officers. Even if there was malice on the part of the officers, such malice does not impose liability on the Commissioners. Plaintiffs have failed to allege facts that would show malice on the part of the Commissioners. Therefore, the Commissioners are entitled to official immunity.

Because the Court has deferred ruling on Count Three, the Court will also defer ruling on Count Four as it applies to the individual officers.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant Kansas City Board of Police Commissioners, through its Individual Members Dawn Cramer's, Tom Whittaker's, Madeline Romious's, Scott Boswell, Sr.'s, and Mayor Quinton Lucas's Motion to Dismiss (Doc. #32) is GRANTED. It is further

ORDERED that Defendant Kansas City, Missouri Police Department (KCPD) Officer Shamell Slatton's Motion to Dismiss (Doc. #4) is GRANTED; It is further

ORDERED that Defendants Kansas City, Missouri Police Department (KCPD) Officers Robbie McLaughlin's and Colton Evans's Motion to Dismiss (Doc. #4) is GRANTED IN PART AND DEFERRED IN PART consistent with this Order. It is further

ORDERED that the deadline for filing an amended complaint, which shall include the information detailed *supra,* is two weeks from the date of this Order. The Defendant Officers' answer or other responsive pleading is due two weeks after the filing of an amended complaint.

                    */s/ Lajuana M. Counts*
                    LAJUANA M. COUNTS
                    UNITED STATES MAGISTRATE JUDGE